892 F.2d 1044
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Edward WILLIAMS, Plaintiff-Appellant,
v.
Eugene BARKSDALE, Sheriff, Curtis Shumpert, Sergeant, Frank
Cook, Deputy Jailer, Defendants-Appellees.
 No. 88-5474.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1989.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff James E. Williams brought an action under 42 U.S.C. § 1983 against the sheriff of Shelby County, Tennessee, and two jailers at the Shelby County jail. The case was tried to the court, and judgment was entered for the defendants. On appeal, the plaintiff contends that the district court erred (a) in finding that unsanitary conditions in the lower level of the jail were not unconstitutional, and (b) in concluding that Mr. Williams failed to prove that the jail's law library was constitutionally inadequate. We do not find the plaintiff's contentions persuasive, and we shall affirm the judgment of the district court.
 
 
 2
 * A
 
 
 3
 The lower level of the Shelby County Criminal Justice Complex Jail was designed to hold detainees up to the time they made an appearance in court, while affording easy access to lawyers, bondsmen, detectives, and family. It was contemplated that a detainee not released after his initial appearance would be sent to a "permanent" floor of the jail.
 
 
 4
 At the time of the plaintiff's detention, as now, the policy was to house newly arrived prisoners in the lower level of the jail for no more than 72 hours. Within the first 24 hours, 85 percent of the people brought in were released. By 72 hours, 98 percent had been released. According to Kenneth E. Rook, the operations manager of the jail, the high turnover in the lower level of the jail made it administratively impracticable to "dress out" every incoming prisoner with blankets, sheets, or personal hygiene items. The two percent of the inmates who were sent to a permanent floor after 72 hours did receive these items, but the people who were released within 72 hours did not.
 
 
 5
 Plaintiff Williams was booked into the jail on February 14, 1986. He was placed in what he described as a "filthy" holding cell for approximately an hour. He was then taken to be roll checked, finger printed, and examined by a doctor. Upon the completion of these procedures, he was returned to the holding cell. There he remained only a short time before being moved to a cell block located on the lower level of the jail. Mr. Williams testified that his cell had a toilet, a drinking fountain, and a wash basin with running water, but the cell lacked a mattress, sheets, blankets, and toilet tissue.
 
 
 6
 During the time he was housed on the lower level, Mr. Williams was not permitted to take a shower and was not given a blanket or mattress. He received no personal hygiene items, but it is undisputed that toilet tissue would have been furnished him on request. After approximately 72 hours, Mr. Williams was taken to an area where he was provided with a towel and soap and was allowed to take a shower. He was then assigned to a permanent floor, where daily showers were permitted.
 
 
 7
 Shower facilities did exist on the lower level of the jail, but it was not common practice to let prisoners use them on a daily basis. Edward Totten, of the sheriff's department, testified that inmates on the lower level may now shower daily, but that items such as toothpaste and brushes are not made available because they are a security threat and there is no place to store them.
 
 
 8
 Operations Manager Rook testified that mattresses occasionally were removed from cells on the lower level, but that the jail policy was to have one in each cell and to give an inmate a mattress if he complained of the lack of one. Mr. Rook also testified that it was jail policy to provide toilet tissue on request and to place tissue in the cell periodically.
 
 
 9
 The district court found that the conditions in the lower level were "deplorable," but that they did not rise to the level of a constitutional violation. The court accepted as reasonable the defendants' explanation for the denial of blankets, sheets, and toothbrushes and similar hygiene items.
 
 B
 
 10
 As a preliminary matter, we note that neither of the two issues raised on appeal involves conduct by defendant Shumpert or defendant Cook. And there is no claim of any direct misconduct by Sheriff Barksdale, so to recover against him the plaintiff must show some unconstitutional policy of Mr. Barksdale's. Monell v. Department of Social Servs., 436 U.S. 658, 691-92 (1978).
 
 
 11
 Plaintiff Williams was a pretrial detainee; he had not yet been convicted of any offense. In Bell v. Wolfish, 441 U.S. 520 (1979), speaking of restrictions imposed on pretrial detainees as a matter of policy, the Supreme Court had this to say:
 
 
 12
 "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]....' Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Id. at 538-39 (citations and footnotes omitted).
 
 
 13
 In the case at bar, the district court's factual findings were not clearly erroneous. The testimony of Messrs. Rook and Totten showed that there were legitimate administrative and security purposes for most of the challenged policies, and the district court was entitled to accept that testimony.
 
 
 14
 The record does not explain why inmates on the lower level of the jail were not permitted daily showers in 1986, when they are permitted such showers now. There is no constitutional right to a daily shower or soak in a tub, however--and the Framers, who managed quite well with wash basins, would doubtless have been flabbergasted to learn that anyone could somehow read the Constitution as entitling prisoners to a daily hosing down.
 
 II
 
 15
 Plaintiff Williams also argues that the supposed deficiencies in the jail's law library were such as to deny him access to the federal courts. See Bounds v. Smith, 430 U.S. 817, 828 (1977), where the Supreme Court declared that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Whatever inadequacies there may have been in the legal assistance available to Mr. Williams, however, such inadequacies would not entitle him to judicial relief absent a showing that his right of access to the courts was in fact interfered with. See Walker v. Mintzes, 771 F.2d 920, 931-32 (6th Cir.1985). Absolutely no such interference was shown; the record does not even disclose how long Mr. Williams was confined in the jail.
 
 
 16
 The judgment of the district court is AFFIRMED.